**PALMER v. SKELLY OIL CO. et al.**

No. 16536. Opinion Filed Nov. 22, 1927.

Rehearing Denied Jan. 31, 1928.

(Syllabus.)

**1. Master and Servant—Relation Arising Only out of Contract.**

The relation of master and servant arises only out of contract; to constitute such contract there must be mutual understanding; a mutual agreement between and a mutual meeting of the minds of the parties.

**2. Same—Existence of Relation a Jury Question.**

Evidence examined, and held, question whether the relation of master and servant existed between defendant and plaintiff for the jury.

**3. Same—Workmen's Compensation Law of Kansas—Benefits Optional with Employer and Employee.**

Under the Workmen's Compensation Law of the state of Kansas, every employer and every employee, entitled to come within its provisions, is given the right to elect whether or not be will come within its provisions.

**4. Same—Employer not Presumed to Have Come Within Provisions of Law.**

Where an employee of one who is not presumed to come within its provisions has not himself elected to come thereunder, it will not be presumed that he is within its provision.

Commissioners' Opinion, Division No. 2.

Error from District Court, Canadian County; W. H. Zwick, Judge.

Action by W. S. Palmer against the Skelly Oil Company and the Tidal Oil Company.

Judgment for defendants, and plaintiff brings error. Affirmed in part and reversed in part.

Ledbetter, Stuart, Bell & Ledbetter and Morrison & Morrison, for plaintiff in error.

Y. P. Broome, W. P. McGinnis, Alvin F. Molony, Joe T. Dickerson, and W. P. Z. German, for defendants in error

DIFFENDAFFER, C. This is an action for damages for personal injuries, alleged to have been received by plaintiff while he was engaged as a driller in drilling an oil well on a lease owned by defendants in Greenwood county, Kan.

The accident occurred on the 14th day of January, 1923. Plaintiff alleges that he was employed by one Clyde Boggs, under the name of Clyde Drilling Company; that Boggs was drilling the well under a contract with defendants, when he employed plaintiff, and that he commenced to work on the well about the 27th day of December, 1922; that defendants had erected an engine house, belt house and derrick, and thereafter contracted with Boggs to furnish and install the necessary drilling machinery and drill the well; sets out specifically the injuries, and alleged negligence in the construction of the belt house; and alleged that as the belt house was constructed and the machinery installed therein, there was not sufficient room between the wall of the belt house and the belt wheel by which the machinery connected with the engine by belt was driven to allow him in the performance of his duties to pass between the wheel and the wall, and that a key which was used to tighten the wheel on the shaft was permitted to extend several inches beyond the edge or rim of the belt wheel, so that plaintiff, in passing between the wall and the wheel, at the direction of the superintendent in charge of the work at that time for defendant Skelly Oil Company, to place dressing on the belt to prevent it from slipping, was caught by the key on the revolving shaft, resulting in serious and permanent injuries to him. He seeks to charge defendants with responsibility for these injuries, and alleges that, on or about January 12, 1923, two days before the date of the accident, Clyde Boggs, his employer, and defendants entered into an arrangement whereby defendants took over the work and assumed the drilling of the well, and placed their superintendent in full charge thereof, without the knowledge of plaintiff, and charges negligence of defendants in failing to properly inspect the building, machinery, etc., and in failing to furnish a suitable guard for the wheel, belt,.

shaft, and key. He then alleges that he was not at the time an employee of defendants, but he was then, as he had theretofore been, an employee of Clyde Boggs, and that neither defendants nor Clyde Boggs had ever informed him of the arrangement whereby defendants were to take over the drilling of the well. and that he had no knowledge thereof, and had not consented to the transfer of his services from Clyde Boggs to defendants. He then alleges that Boggs was not operating under the provisions of the Workmen's Compensation Law of the state of Kansas, in that said law provides that it shall not take effect unless at least five men shall have been continuously employed for at least 30 days prior to the time of the accident, unless such employer shall have filed written election with the Secretary of State to come under such law, and that Boggs had not employed five men continuously for 30 days prior to the accident, and had not filed such written election. A copy of the Workmen's Compensation Law of Kansas was attached to his petition as a part thereof.

The defense of Skelly Oil Company was, that it alone was developing said lease and had erected the belt house. It admitted that it had, on the 12th day of January, entered into the arrangement with Boggs, whereby it did take and assume full charge of the rig, machinery, and control and direction of the employees, and placed the employees, including plaintiff, under the charge, control, direction. and management of its superintendent, and that plaintiff, having knowledge thereof, accepted employment by it and became its employee; that if it be mistaken as to plaintiff becoming its employee, nevertheless the work was at the time of plaintiff's injury under its control and management. It then pleaded contributory negligence and assumption of risk; it then pleaded that it had more than two men employed, and that under the Workmen's Compensation Law of Oklahoma, the court was without jurisdiction; further, that it had complied with and elected to come under the provision of the Workmen's Compensation Laws of the state of Kansas, and that the injury of plaintiff was one for which compensation was provided by the laws of that state; that plaintiff had not complied with that law in that no notice of the injury was given, and no claim for compensation was filed, within the time provided by the Workmen's Compensation Law of the state of Kansas.

Defendant Tidal Oil Company answered by general denial, and adopted substantially all the allegations in the answer of Skelly Oil Company.

Plaintiff replied by general denial, and upon the issues thus joined, the case was tried to a jury, resulting in a directed verdict for defendants.

We think the order of the trial court was correct as to defendant Tidal Oil Company, as there is no evidence whatever to connect them with any responsibility. It is clear that the entire transaction for the drilling of the well was with the Skelly Oil Company.

As to defendant Skelly Oil Company, a different situation is presented. The trial court in passing upon the motion for a directed verdict, after commenting on the question of whether or not primary negligence had been proved, said:

"That I think is incidental only because I think under the undisputed facts he was an employee of the Skelly Oil Company, and therefore his remedy would be before the Industrial Commission, and not before this court as a common law liability."

This appeal presents two questions: First, did the court err in holding as a matter of law that plaintiff was at the time of his injury an employee of the Skelly Oil Company? And, second, that if plaintiff was not an employee of the Skelly Oil Company at the time of his injury, would his remedy be under the Workmen's Compensation Law of the state of Kansas by reason of the provisions of section 3 of said act?

As to the first question, plaintiff introduced evidence tending to prove the allegations of his petition with reference to his having no knowledge of the fact that defendant Skelly Oil Company had taken over the work and assumed complete charge thereof two days before his injury, and also to the effect that after the superintendent of the Skelly Oil Company had taken charge of the work, he, plaintiff, did not know that he was the superintendent for Skelly Oil Company, and that he, plaintiff, had asked the superintendent whom he, plaintiff, was working for, and defendant's superintendent informed him that he was still working for Clyde Boggs. The evidence also shows that Boggs paid plaintiff for the labor down to the date of his injury. Defendant offered some evidence tending to prove that plaintiff knew of the arrangement and impliedly accepted the Skelly Oil Company as his employer.

It is conceded that if plaintiff was an

employee of Skelly Oil Company, he cannot recover in this action. Whose employee he was, we think, was a question for the jury.

In 39 Corpus Juris, p. 36, it is said:

"The general servant of one person may become the servant of another by submitting himself to the direction and control of the other with respect to a particular transaction or piece of work, and even though the general employer has an interest in the special work, but such a relation between the borrower and the servant is not established unless it appears that the servant has expressly, or by implication, consented to the transfer of his services to the new master. Where a master gives the labor of his servant to another, the master retaining supervision and control, the loaned servant is not the servant of the borrower, but is while so engaged the servant of the general master"

In New v. McMillan, 79 Okla. 70, 191 Pac. 160, this court held:

"Where it is agreed that the relation of master and servant had existed up to a given time, but an issue as to whether such relation ceased at such time and was transferred to a third person, a reasonable test in such case is whether or not the servant by mutual agreement terminated his employment, ceased to be under the control and orders of the former master, renounced obedience to such master, and knowingly and willingly subjected himself to the orders of another under a new agreement with a new master."

See also, King v. A. T. & S. F. Ry. Co. (Kan.) 195 Pac. 622; Bowie v. Coffin Valve Co. (Mass.) 86 N. E. 914; Asch v. Washburn Lignite Coal Co. (N. Dak.) 186 N. W. 757.

It is contended by defendant, however, that whether plaintiff was its employee or the employee of Boggs, his remedy would still be under the Workmen's Compensation Law of Kansas, by reason of section 3 of that act, which is:

"Subcontracting. (a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business, or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. * * *"

Our attention is called to Purkable v. Greenland Oil Co. (Kan.) 253 Pac. 219, where it is held:

"An oil company engaged in developing mineral resources of leased land and producing oil therefrom, let to an independent contractor a contract to erect a derrick on the land, as an incident to the drilling of an oil well by the company. While the derrick was under construction, one of the contractor's workmen fell from it and received injuries which resulted in death. The workman's dependents sued the company for compensation. Held, the work of building the derrick was part of the company's business, within the meaning of the subcontracting section of the Workmen's Compensation Act (R. S. 44-503); the accident occurred on premises on which the company had undertaken to execute work, within the meaning of subdivision (a) of the section."

We think, under the admitted facts in this case, the relation of principal and contractor between Boggs and Skelly Oil Company ceased on January 12th, when Skelly Oil Company took over the work. and that, strictly speaking. section 3 of the Workmen's Compensation Law would not apply.

But should it be found. as contended by plaintiff, that he was still the employee of Clyde Boggs, we would then have a situation very similar to that in Georgia Ry. & Power Co. v. Middlebrooks (Ga.) 128 S. E. 777, wherein the railway company was being sued for negligently causing the death of plaintiff's son, while he was an employee of the Central Georgia Power Company; that pursuant to an arrangement between the two companies the defendant had erected and maintained a switch on the property of the other company for the purpose of interchanging current; that while plaintiff's son was in the performance of his duty as an employee of the Central Georgia Power Company, he was requested by the defendant to turn the switch, and in attempting to do so was killed because of a defect in the switch. The defense in that case was that while decedent was operating the switch, he was an employee and under the direction of defendant company, and was subject to the Workmen's Compensation Act. The court in holding against this defense said:

"In this case we have what, prior to the passage of the Workmen's Compensation Act (Laws 1920, p 167), would have been an

anomalous situation, viz., the defendant seeking to be regarded as the master of the deceased, who is alleged to have been negligently killed. The reason, however, is obvious. Such a relation would bring the defendant under the Workmen's Compensation Act, thereby greatly reducing its liability, if not discharging it altogether, under the particular facts of this case."

So it would appear here, defendant is seeking to be regarded as the master of plaintiff, for the obvious reason that it would greatly reduce its liability.

Defendant insists, however, that the Kansas Workmen's Compensation Act applies, but we fail to see the force of the argument. A careful examination of that act will disclose that it was designed and intended to allow every employer and every employee the right to come within its provision or to decline so to do. Section 42 of the act provides:

"Every employer entitled to come within the provisions of this act, as defined and provided by this act, shall be presumed to have done so, except such employer privileged to elect to come within the provisions of this act, as provided in section 1 hereof and section 5902 of the General Statutes of 1915, unless such employer shall file with the Secretary of State at Topeka, Kan., a written statement that he elects not to accept thereunder, and thereafter any such employer desiring to change his election shall only do so by filing a written declaration thereof with the Secretary of State. Notice of such election shall be forthwith posted by such employer in conspicuous places in and about his place of business."

Section 7 provides:

"This act, therefore, shall only apply to employers by whom five or more workmen have been (employed) continuously for more than one month at the time of the accident; provided, however, that employers having less than five workmen may elect to come within the provisions of this act, in which case his employees shall be included herein, as hereinafter provided."

Section 43 provides:

"Every employee entitled to come within the provisions of this act shall be presumed to have done so unless such employee shall file with the Secretary of State, before injury, a written declaration that he elects not to accept thereunder, and at the same time file a duplicate of said election with his employer, and thereafter any such employee desiring to change his election shall only do so by filing a written declaration thereof with the Secretary of State and a duplicate of same with his employer."

Section 44 takes from every employer entitled to come within the provisions of the act, and who elects not to do so, the defenses of: (a) Assumption of risk, (b) negligence of a fellow servant, and (c) contributory negligence.

Section 45 continues each of these defenses in full force as against every employee entitled to come within its provisions, and who elects not to do so, and in favor of every employer of such employee so electing not to come within its provision who has not filed his election not to come within the provisions.

Plaintiff, if it is found that he was still the employee of Boggs, was not presumed to come within the Workmen's Compensation Law, for the reason that Boggs was not presumed to come within it in that he (Boggs) had not employed five men continuously for 30 days prior to the accident, and had not filed his election to come within the law. Plaintiff had not filed his election to come within the law.

If it should be found that plaintiff was the employee of defendant Skelly Oil Company, in that he knew of the arrangement whereby they took over the work, they having elected to come within the Workmen's Compensation Law, then plaintiff would be presumed to come under the provision of the law, and it would follow as a matter of course that he could not maintain this action.

It is suggested by defendants that, if the relation of master and servant did not exist between plaintiff and defendant Skelly Oil Company, then the company owed him no duty except to not wantonly or intentionally injure him.

We think the reasoning of the court in the Georgia Railway & Power Co. Case, supra, meets this suggestion. In the opinion in that case, the court, after showing that the plaintiff did not allege that her son was employed by the defendant, Georgia Railway & Power Company, said:

"On the contrary she plainly alleged that 'Petitioner's son was working for the Central Georgia Power Company,' and other portions of the petition and the evidence show that her son was a licensee to do this work for defendant company, and that he was in the performance of his duty when he was killed by the negligence of the defendant company. In other words, he was not only licensed to handle the switch of the defendant, but it was his duty, under orders of his employer, the Central Georgia Power Company, to do so."

Here, under plaintiff's claim, he was per-

forming what would have been his duty, under orders of one who he thought was superintendent for his employer, Boggs, but was in fact doing the work for defendant, and while so doing was injured by reason of alleged negligence of defendant.

Considering the evidence in its most favorable light to plaintiff, as it must be on a motion for a directed verdict against him, we are of the opinion that the court erred in holding as a matter of law that plaintiff was the employee of Skelly Oil Company at the time of his injury, and holding that his exclusive remedy was before the Industrial Commission.

The judgment of the trial court should be affirmed as to defendant Tidal Oil Company, and reversed and remanded for new trial as to defendant Skelly Oil Company.

BENNETT, HALL, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 39 C. J. p. 34, §2; Workmen's Compencation Acts—C. J. p. 47, §38; 19 R. C. L. p. 493; 3 R. C. L. Supp. p. 815: 4 R. C. L. Supp. p. 1188; 5 R. C. L. Supp. p. 984; 6 R. C. L. Supp. p. 1070. (2) 39 C. J. p. 1108, 1109, §1304; Workmen's Compensation Acts—C. J. p. 48, §38. (3) Workmen's Compensation Acts—C. J. p. 5, §2; p. 53, §44 (Anno); p. 54, §46 (Anno); anno. 1916A, 72; 28 R. C. L. p. 833; 4 R. C. L. Supp. 1873. (4) Workmen's Compensation Acts—C. J. p. 54, §46 (Anno).