## CITY OF TULSA v. RANDALL.

No. 25391.   Nov. 26, 1935.

Hudson & Hudson and H. O. Bland, for plaintiff in error.

Bailey E. Bell and W. Cliff Klein, for defendant in error.

PER CURIAM. Throughout this opinion, the parties will be referred to as they appeared in the trial court. Plaintiff, accompanied by two other persons, one of whom owned and was driving a Ford coupe in which they were riding, were on their way to Mohawk Park to attend a picnic. They were traveling east on the Mohawk road, when at a point between Lewis and Harvard streets in the city of Tulsa they observed a Ford truck, which it developed was owned by defendant and driven by Zack Wright, a regular employee of the defendant, traveling west on the Mohawk road. It appears from the evidence that as the driver of defendant's truck traveled along he saw and was waving at his niece who was hoeing in a garden on the south side of the Mohawk road, and in doing so got over on the left or south side of the road, and the driver of the Ford coupe in which plaintiff was riding, in order to keep from being struck headon by the truck, swerved his car to the left or north side of the road, there being a ditch on the south side which prevented him from swerving that way; and at the same time, Wright, the driver of the truck, swerved the truck to his right or north side of the road and collided with the Ford coupe, striking it on the right front end and seriously injuring the plaintiff, who was riding between the driver and the other occupant of the car.

Defendant in its answer to the petition of plaintiff denies that Zack Wright was an agent, servant or employee of the city of Tulsa, and that the injuries complained of by plaintiff were contributed to and caused by the negligence and want of care of plaintiff.

The only question presented on appeal is, Was Zack Wright in the employment of the city of Tulsa and on a mission for and in the performance of his duties as such employee at the time of the collision and resulting injury to the plaintiff? If so, defendant is liable in damages to plaintiff for the injuries sustained by him in the collision, as it is clear from the evidence that Zack Wright was negligent and that plaintiff was not guilty of contributory negligence. It is clear from the evidence that Zack Wright was a general employee of the city of Tulsa; but defendant contends and sought to show that he had been loaned to the R. F. C. made-work program, and at the time the collision occurred was performing a duty in that capacity, was under the direction of that agency, and not on a mission for nor under the control of the city of Tulsa. We have carefully reviewed the evidence and are of the opinion that it does not sustain defendant in that contention; but, on the other hand, shows that when the collision occurred he was an employee and under the control of, and in the performance of his duties for defendant. Wright had gone out to Mohawk Park to get some R. F. C. workers who were working on a city project, but they had already left, and he was returning with the truck empty.

Defendant contends that the "Loaned Servant Doctrine" applies, and in support of their contention cites the following cases: Palmer v. Skelly Oil Co., 129 Okla. 32, 263 P. 440; Thomas v. Great Western Mining Co., 150 Okla. 212, 1 P. (2d) 165; Isaacs v. Prince & Wilds (Miss.) 97 So. 558; Sawmill Construction Co. v. Bright (Miss.) 77 So. 316; Carr v. Burke, 169 N. Y. Supp. 981; Burns v. Jackson (Cal. App.) 211 P. 821; Burns v. Southern Pacific Co. (Cal. App.) 185 P. 875; Diamond v. Sternberg

Motor Truck Co., 149 N. Y. Supp. 1000; American Express Co. v. O'Conner, 279 Fed. 998; Braun et al. v. Averdick (Ohio) 150 N. E. 41; also, 39 Corpus Juris, section 5, p. 36; and 18 R. C. L. section 244, p. 784. The law as laid down in these cases is not applicable to the facts in this case.

The general law governing loaned servants is stated in 39 C. J. 1274, which is as follows:

"The test of liability for the acts of the servant is whether in the particular service which the servant is engaged or requested to perform he continues liable to the direction and control of his original master or becomes subject to that of the person to whom he is lent or hired, or who requests his services. It is not so much the actual exercise of control which is regarded as the right to exercise such control. To escape liability the original master must resign full control of the servant for the time being, it not being sufficient that the servant is partially under the control of a third person; and it is necessary to distinguish between authoritative direction and control and mere suggestions as to details or the necessary co-operation where the work furnished is part of a larger operation. A servant of one employer does not become the servant of another for whom the work is performed merely because the latter points out the work to the servant, or gives him signals calling the service into activity, or gives him directions as to the details of the work and the manner of doing it."

The law as announced in New v. McMillan, 79 Okla. 70, 191 P. 160, is controlling in this case. We quote from the body of the opinion:

"In cases like the one at bar, where it is agreed that the relation of master and servant had existed, but where there is an issue as to whether such relation had ceased and been transferred to a third person, a reasonable test and it seems to us the real test in such case, is whether or not the servant by mutual agreement terminated his employment, ceased to be under the control and subject to the orders of the former master, renounced further obedience to such master, and knowingly and willingly subjected himself to the orders of another, under a new contract with a new master. Likewise, the test as to a third person's liability for injuries caused by the acts of such servant depends upon whether the master has relinquished all control over the servant, or still retains a general contract over him, and where only partial contract is exercised by such third person he cannot be held liable for the acts of such servant."

Again quoting from the body of the opinion:

"It is well settled that one who is a general servant of another may be loaned or hired by his master to another for some special service, so as to become as to this service the servant of such third person, the test being whether in the particular service in which he is engaged to perform he continues liable to the direction and control of his master or becomes subject to that of the person to whom he is loaned or hired. It makes no difference whether the proprietor to whom a servant is loaned actually exercises his right of control or direction as to the details of the work or simply sets the servant to do what is necessary, trusting to his expert skill for the results." 18 R. C. L. pages 493-4, sec. 3, citing Wyman v. Berry (Me.) 75 Atl. 123; Sacker v. Waddell (Md.) 56 Atl. 399; Hasty v. Sears (Mass.) 31 N. E. 759; Gagnon v. Dana (N. H.) 39 Atl. 982, 41 L. R. A. 389; Wilson v. Valley Imp. Co. (W. Va.) 73 S. E. 64, 45 L. R. A. (N. S.) 271; and Patterson v. Canadian Pac. R. Co. Co., 26 Ont. L. Rep. 410; Delory v. Blodgett (Mass.) 69 N. E. 1078, 64 L. R. A. 114.

The following cases fully support the rule laid down by New v. McMillan, supra: Neff v. Brandeis et al. (Neb.) 135 N. W. 232; Billig v. Southern Pac. Co. (Cal.) 209 P. 241; Andrews v. Kellogg (Colo.) 92 P. 222; Valdick v. LeClair (Cal. App.) 289 P. 673, at pages 676 and 677.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorney C. T. O'Neal as special master in the preparation of this opinion. After the analysis of law and fact was prepared by Mr. O'Neal, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, WELCH, and CORN, JJ., concur.