Austin Corydon MINER, Petitioner,

v.

TURVEY PACKING COMPANY, Standard Insurance Company and The State Industrial Court, Respondents.

No. 40374.

Supreme Court of Oklahoma.

March 3, 1964.

Rehearing Denied June 9, 1964.

Bishop & Bishop, Seminole, H. Corky Bishop, Seminole, of counsel, for petitioner.

Fenton, Fenton, Smith & McCaleb, Oklahoma City, for respondents.

WELCH, Justice.

The parties occupy the same relative position in this court as they appeared in the Industrial Court and will be hereinafter referred to as they therein appeared. Also, the State Board of Agriculture will be referred to by name.

The record reveals that respondent Turvey Packing Company was engaged in the meat packing business, buying and slaughtering live animals, and processing the meat and meat products for consumption by the general public. In carrying on such business the respondent was operating by and

under regulations and rules promulgated by the State Board of Agriculture.

In order to be eligible for Federal grading it was necessary that state inspection of animals be made both before and after slaughter. Such inspection had to be made by a lay inspector in the general employ of the State Board of Agriculture, and each inspection had to be carried out in the manner and method set forth in the above referred to rules and regulations. Under such rules and regulations the lay inspector was in attendance at the plant at all times it was in operation. Only the State Board of Agriculture could hire or discharge an inspector. It paid his salary by State Treasurer's check drawn for that purpose. The inspector was answerable to no one except the State Board of Agriculture and subject only to its orders.

The respondent, desiring inspection service as above outlined, made application to The State Board of Agriculture for a lay inspector; whereupon an agreement was entered into between The State Board of Agriculture and respondent. Among other things the agreement provided that "No lay inspector of the State Board of Agriculture shall do any work, manual or supervisory, other than the duties required by The State Board of Agriculture." Also, by the terms of the agreement respondent was to pay a prorated part of the salary of the lay inspector. The amount assessed was paid by respondent direct to the State Board of Agriculture, and by it deposited into a fund known as The State Board of Agriculture Trust Fund.

Pursuant to respondent's request and the agreement entered into The State Board of Agriculture sent a lay inspector (claimant) to respondent's plant. While carrying out his duties as such inspector he slipped and fell on the concrete floor, breaking his left hip.

On May 29, 1962, claimant filed a claim for compensation in the State Industrial Court against respondent, Turvey Packing Company, and its insurance carrier, The Standard Insurance Company. A trial

judge of the Industrial Court entered an order denying the claim for compensation. The order was based upon the trial judge's finding that claimant was not an employee of Turvey Packing Company at the time of the accidental injury. Claimant has appealed direct to this court from the trial judge's order.

Only one assignment of error is presented to this court. It is:

"The State Industrial Court erroneously ruled that claimant was not covered by the Compensation Act at the time of his injury."

His argument is to the effect, that there is no competent testimony to sustain the findings of the trial judge "that on the date of the aforesaid injury, the claimant, Austin Miner, was not an employee of respondent, Turvey Packing Company." In other words, such a finding is contrary to all the evidence in the case and contrary to law.

Claimant's argument is predicated upon the "loaned servant doctrine" and he cites in support thereof the cases of Wylie-Stewart Machinery Co. v. Thomas, 192 Okl. 505, 137 P.2d 556; and M. W. Ishmael, et al. v. Henderson, et al., Okl., 286 P.2d 265. We have examined the authorities cited by claimant and are of the opinion that they are in part applicable to the facts as disclosed by the record, but not in support of claimant's argument and contention. As to whether or not Turvey Packing Company could be held liable under the "loaned servant doctrine" we must apply the test consistently followed by this court, i. e.,

"Whether in the particular service which he is engaged or requested to perform he continues liable to the direction and control of his original master, or becomes subject to that of the person to whom he is lent or hired."

In Hodges v. Holding, 204 Okl. 327, 229 P.2d 555, the rule is announced in the third syllabus as follows:

"The controlling factor in determining whether a regular employee of one master has become the special or loaned

servant of another is: Has the general employer released, for the time required to perform some particular work, all authority to control or direct the manner and method of the work to be done and surrendered such direction and control to the special employer?"

In the body of that opinion the court quotes from City of Tulsa v. Randall, 174 Okl. 630, 52 P.2d 33, as follows:

"Where a servant is under the control and subject to the orders of the master and under his employ, owes obedience to such master, and is ordered by such master to assist a third person to do a piece of work, and while so doing he remains under the control and subject to the orders of his master, he does not in such case become the servant of such third person, but remains the servant of his master."

See, also, Dixon Brothers Lumber and Supply Co. et al. v. Watson, et al., Okl., 353 P.2d 478, and Roberts Truck Service, et al. v. Singleterry, et al., Okl., 357 P.2d 217.

Claimant places strong emphasis upon the fact that respondent voluntarily requested inspection service from The State Board of Agriculture, and entered into the agreement with said Board to obtain this service. It is his contention that a part of the agreement was that respondent relinquished its right to control claimant and agreed that complete control would remain in the State Board of Agriculture; that by agreeing to exercise no control respondent cannot now be heard to complain as to this issue. While such argument is unique in its inception it is entirely incompatible with the law, by and under which packing plants are required to operate. By operation of law they fall within the jurisdiction of the State Board of Agriculture. 2 O.S.1961 § 2–7 and § 6–41 et seq.

The authority to regulate and control packing plants processing meat and meat products for consumption of the general public has been, by the Legislature, wisely placed in the hands of The State Board of Agriculture, not so much for the benefit of the packer, but for the protection of the general health and well being of the public. To say that the respondent (packer) ever had the right to control claimant (inspector) in any particular would circumvent the rules and regulations promulgated by The State Board of Agriculture, which rules and regulations have the force and effect of law (2 O.S.1961 § 2–7), defeat the very purpose of the Act, and would be contrary to public policy. Respondent could not relinquish something he did not have, or could not, under the law, acquire.

Therefore having completely reviewed the record herein we are of the opinion that since The State Board of Agriculture completely supervised and controlled the work and the manner and method of performing the inspections or particular work of the claimant, that claimant remained the servant of The State Board of Agriculture, and did not become the servant or employee of the respondent.

The order is therefore sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.