M. W. ISHMAEL and Standard Insurance Company, Petitioners,

v.

Mae HENDERSON, sole dependent heir at law of Harley Thomas Henderson, deceased, Mid-Continent Petroleum Corporation, and The State Industrial Commission, Respondents.

No. 36568.

Supreme Court of Oklahoma.

July 5, 1955.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, for petitioners.

R. H. Wills, J. P. Greve, Ben Hatcher and Walter B. Hall, Tulsa, for respondent Mid-Continent Petroleum Co.

Doyle Watson, Drumright, for respondent Mae Henderson.

WILLIAMS, Vice Chief Justice.

This is an original proceeding instituted by M. W. Ishmael and Standard Insurance Company to review an order of the State Industrial Commission awarding death benefits to claimant, Mae Henderson, as sole dependent heir at law of H. T. Henderson, deceased. No contention is made that claimant is not entitled to the award of death benefits, the only complaint made being that such award should have been made

against respondent Mid-Continent Petroleum Corporation and not against petitioners.

Petitioner Ishmael is a contractor engaged in general oil field work. This work includes contract cleaning and painting; ditching, general lease work and the hiring out or furnishing of roustabout labor. H. T. Henderson was a roustabout laborer employed by Ishmael and furnished by him to Mid-Continent Petroleum Corporation to do general roustabout work at its gasoline plant No. 3. Ishmael furnished such roustabout labor under an agreement with Mid-Continent whereby he was paid by Mid-Continent for his employees' services at the rate of $1.50 per hour per employee. Ishmael, in turn, paid his employees at the rate of $1 per hour. It is undisputed that Ishmael hired Henderson, paid Henderson his weekly wages at the rate of $1 per hour, and that Henderson's wages, as well as the wages of other roustabout workers similarly employed, were included in Ishmael's pay roll for the purpose of determining the amount of premium due to Standard Insurance Company for workmen's compensation coverage. On November 13, 1953, Henderson received an injury which later resulted in his death, the details of which are adequately covered in the order of the commission. Such order, in so far as is pertinent, is as follows:

"1. On November 13, 1953, Harley Thomas Henderson sustained an accidental injury arising out of and in the course of his employment in a hazardous occupation within the meaning of the Workmen's Compensation Law of the State of Oklahoma, as a direct and proximate result of which he died on November 21, 1953. The accidental injury occurred as follows: During the course of the day of the accident, said deceased worked on an Agitator in a gasoline still in the casinghead gasoline manufacturing plant of the respondent, Mid-Continent Pet. Corp., repairing leaky flanges. His clothing, particularly his trousers, became impregnated with mineral seal oil, an inflammable chemical, which sprayed from the flanges on which he worked. At the conclusion of the day's work he

went to his pickup truck, wearing the same clothing, for the purpose of returning to his home. The pickup truck was parked adjacent to the enclosure surrounding the plant in an area commonly used for ingress and egress by the company and its employees when he struck a match to light a cigarette while sitting in the cab of the truck, his trousers caught fire causing him to receive severe burns, from which he died.

"2. At the time of said accidental injury, Harley Thomas Henderson was in the employ of the respondent M. W. Ishmael, and was included on said respondent's payroll for the purpose of determining the amount of the premiums due his Workmen's Compensation Insurance Carrier, The Standard Insurance Company. He was working at the Mid-Continent Pet. Corp. plant near Drumright, Oklahoma, under the supervision and direction of said corporation's plant superintendent, by arrangement between the Mid-Continent Pet. Corp. and said M. W. Ishmael. The deceased workman was furnished by Ishmael to Mid-Continent as contract labor. Ishmael's insurance carrier had no knowledge of the specific employment in which Henderson was being used at the time of the accident resulting in his death. Mid-Continent Pet. Corp. had the authority to supervise his work, and did so, and could terminate the use of his services by it at any time. But Mid-Continent Pet. Corp. had no authority to terminate his employment with Ishmael. Under the circumstances the respondent M. W. Ishmael and his insurance carrier, Standard Insurance Company, are primarily liable to the claimant herein for benefits under the Workmen's Compensation Law because of the death of said Harley Thomas Henderson, and the respondent Mid-Continent Pet. Corp. is secondarily liable."

Petitioners contend that the deceased was working for Mid-Continent at the time of his death and not for Ishmael and that the mere fact that insurance protection

is afforded a claimant by an employer who loans the deceased servant to another, does not serve to make the person who loans the servant primarily liable for the death of the servant; that it is the principal employer to whom the servant is loaned or the employer who was responsible for the death who must pay the benefit.

Petitioners' contention is based on the fact that the deceased was working at Mid-Continent's plant and that his work was under the supervision and control of Mid-Continent's plant superintendent at the time of his death. They say that under such circumstances the "loaned servant" doctrine is applicable and cite Wylie-Stewart Mach. Co. v. Thomas, 192 Okl. 505, 137 P. 2d 556; Thomas v. Great Western Min. Co., 150 Okl. 212, 1 P.2d 165; Byrne Doors, Inc., v. State Industrial Commission, 193 Okl. 541, 145 P.2d 754, and Aderhold v. Bishop, 94 Okl. 203, 221 P. 752, 60 A.L.R. 137.

The "loaned servant" doctrine is, in brief, the rule that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person. Such doctrine arose and has most often been applied in cases arising out of negligence of a servant resulting in injury to a third party wherein it became necessary to determine who was the employer or master responsible for the acts of the servant. It is an apparent exception to the general rule that the relation of employer and employee is contractual and is created in every instance by a contract, express or implied. The relationship of master and servant under such doctrine is, however, constructive, not real, and is actually a fiction resorted to by the courts to enable them with greater ease and facility to apply the law of negligence, especially the rule of respondeat superior. Some jurisdictions have held that such fiction utilized in the law of negligence has no place in the administration of a workmen's compensation act. See, for example, McDowell v. Duer, 78 Ind.App. 440, 133 N.E. 839, and cases therein cited, wherein the general or lending master alone was held liable for compensation

payable under the workmen's compensation act. Other jurisdictions have held the "loaned servant" doctrine applicable to cases arising under workmen's compensation acts as well as to those at common law. See, for example, Scribner's Case, 231 Mass. 132, 120 N.E. 350, 3 A.L.R. 1178, wherein an award against a general or lending employer was reversed. This court has applied the "loaned servant" doctrine in two cases arising under the Workmen's Compensation Act of this state, namely, Byrne Doors, Inc., v. State Industrial Commission, 193 Okl. 541, 145 P.2d 754, and Crutchfield v. Melton, Okl., 270 P.2d 642. In both of those cases, however, we merely sustained an award against the special or borrowing master on the basis of the facts of the particular case, and the facts in the case at bar are in no wise identical with the facts in either of those cases. We did not hold in either of those cases that the general or lending employer is necessarily freed from liability by the act of hiring out his employees to third persons to be used by them in the performance of their work. We think the New York Court of Appeals laid down the appropriate rule in the case of DeNoyer v. Cavanaugh, 221 N. Y. 273, 116 N.E. 992, wherein the following pertinent language was used:

"Even where no property of the general employer is intrusted to the employe to be used in the special employment, the general employer pays the compensation, may direct the employe when to go to work, and may discharge him for refusal to do the work of the special employer. The Industrial Commission, therefore, has full power to make an award against the general employer. It does not follow that by the application of this rule the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employe between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his em-

ployes. Comerford's Case, 224 Mass. 571, 573, 113 N.E. 460. Thus at one and the same time they are generally the employes of the general employer and specially the employes of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the Workmen's Compensation Law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards (Workmen's Compensation Law (Consol.Laws, c67) § 3, subds. 3, 4), and the Industrial (Accident) Commission may make such an award as the facts in the particular case may justify."

The Supreme Court of California expressed similar views in the case of Employers' Liability Assur. Corp. Limited, of London, England v. Industrial Accident Comm., 179 Cal. 432, 177 P. 273.

It should also be noted that the facts in this case are not those of the usual "loaned servant" case. In the typical or usual "loaned servant" case it is not the usual business of the original master to loan or hire out such servant and the business of such master is not directly furthered thereby, the borrowing master alone benefiting from the servant's labor and the original master making no profit from the borrowing of his servant. In the case at bar, petitioner Ishmael was in the business of furnishing or hiring out roustabout labor and decedent was employed by him for that very purpose. Certainly Ishmael's business was furthered by decedent's labor and Ishmael certainly profited thereby. We have heretofore noticed the distinguishing nature of such facts in Crutchfield v. Melton, supra, wherein we said [270 P.2d 645]:

"Those rules were discussed in the more recent case of Hodges v. Holding, 204 Okl. 327, 229 P.2d 555, wherein it was held that, at the specific time the servant was under the control of the general employer, whereas, in the

Wylie-Stewart case, supra, it was held that he was under the control of the special or temporary employer. The distinction made was that, in the Hodges case, the work being performed was part of the regular business of the general employer. In some cases it is of indirect benefit to consider whether or not the general employer stands in the theoretical position of an independent contractor rather than a loaning employer as regards the act being performed. This method of reasoning readily distinguishes the Wylie-Stewart case and the case at bar from the Hodges case and also the cases of Burrows v. State Industrial Comm., 188 Okl. 523, 111 P.2d 175 and B. & M. Const. Co. v. Anglin, 185 Okl. 543, 94 P.2d 907, also cited and relied upon herein by respondent Crutchfield.

"In the case at bar, Evans was not engaged in the business of hiring out tractors and bulldozers with drivers for them."

■ The decisive element in this case, however, is the fact that Ishmael not only hired and paid decedent and others like decedent to do the very thing decedent was doing when he suffered the injury resulting in his death, but also purchased from petitioner Standard Insurance Company a workmen's compensation insurance policy for the specific purpose of providing such insurance coverage for such employees while so engaged. As already noted, decedent Henderson's wages were included in computing the pay roll upon which the premiums paid for such insurance were based. The case therefore falls squarely within the provisions of 85 O.S.1951 § 65.3, which provides:

"Insurance contract presumed for benefit of those considered in determining premiums.—Every contract of insurance issued by an insurance carrier for the purpose of insuring an employer against liability under the Workmen's Compensation Law shall be conclusively presumed to be a contract for the benefit of each and every

person upon whom insurance premiums are paid, collected, or whose employment is considered or used in determination of the amount of premium collected upon such policy for the payment of benefits as provided by Workmen's Compensation Law regardless of the type of business in which the employer of such person is engaged or the type of work being performed by the employee at the time of any injury received by such employee arising out of and in the course of his employment, which contract may be enforced by such employee as the beneficiary thereof, before the State Industrial Commission as now provided by law. Laws 1947, p. 627, § 3."

The insurance policy issued by Standard to Ishmael is therefore by law a contract for the benefit of decedent Henderson which may be enforced by the State Industrial Commission, and such commission quite properly entered an order which had the effect of enforcing such contract.

Petitioners contend that it is a basic rule of equity and fair play that where there is financial responsibility on the part of both Ishmael and Mid-Continent, that Mid-Continent as the employer benefiting from the labors of the deceased, should pay the benefits conferred by the Workmen's Compensation Law, and that it would be a travesty on justice and a dangerous precedent to set to hold otherwise. We have already noted that Ishmael benefited from deceased's labors to the extent of making a profit of 50 cents an hour thereon, so this is not a case of placing liability on a party who did not benefit by such labor to the exclusion of a party who did benefit thereby. It is rather a case of placing the liability on the party who by contract and for pay assumed such liability.

It is our view that the insurance policy issued by Standard Insurance Company covered decedent Henderson because it insured him in the very job and in the very work in which he received his death injury, irrespective of whether he was the employee of Ishmael or Mid-Continent or both of them. Standard collected, and has retained, the insurance premiums. We think it justly indebted to Henderson's widow for the insurance to which she is entitled and find no injustice or inequity in an order which requires it to pay her.

Award sustained.

JOHNSON, C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.