**TRANSCON TRUCK LINES, and Transport Indemnity Co., Petitioners,**

**v.**

**Willie ROSS, Woodmansee-Abbott Music Company, and State Industrial Court, Respondents.**

No. 40334.

Supreme Court of Oklahoma.

March 10, 1964.

George E. Fisher, Oklahoma City, for petitioners.

Schwoerke & Schwoerke, Oklahoma City, for respondents.

JACKSON, Justice.

This is an original proceeding by Transcon Truck Lines and its insurance carrier, against Willie Ross and the Woodmansee-Abbott Music Company, to review an award in favor of Willie Ross made by the State Industrial Court.

The award in favor of Ross and against Transcon was based on the proposition that Ross was a "loaned employee" of Transcon. In this court, Transcon argues the single proposition that the finding that Ross was a "loaned employee" is wholly unsupported by the evidence.

For cases in which we have considered the "loaned employee" doctrine, see Moore and Gleason v. Taylor, 97 Okl. 193, 223 P. 611; Snetcher and Pittman v. Talley, 168 Okl. 280, 32 P.2d 883; Manaham Drilling Company v. Wallace, 179 Okl. 613, 67 P.2d 1; Crutchfield v. Melton, Okl., 270 P.2d 642; Ishmael v. Henderson, Okl., 286 P.2d 265.

In Ishmael v. Henderson, supra, we said at page 267 of the Pacific Reporter:

"The 'loaned servant' doctrine is, in brief, the rule that one who is the general servant of another may be loaned or hired by his master to another for some special service so as to become, as to that service, the servant of such third person. Such doctrine arose and has most often been applied in cases arising out of negligence of a servant resulting in injury to a third party wherein it became necessary to deter--

mine who was the employer or master responsible for the acts of the servant. * * *."

In 35 Am.Jur. Master and Servant, Sec. 18, it is said:

"One who has the status of general servant or employee may be lent or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues to be under the direction and control of his master or becomes *subject to* that of the person to whom he has been lent or hired. * * * However, the conclusion as to his status is the same regardless of the showing as to whether the person to whom he has been lent *actually exercises his right of control* or direction as to the details of the work or simply *sets the servant to do what is necessary,* trusting to his expert skill for the result." (Emphasis supplied.)

In Crutchfield v. Melton, Okl., 270 P.2d 642, this court said in discussing the earlier case of Wylie-Stewart Machinery Co. v. Thomas, 192 Okl. 505, 137 P.2d 556:

"The cited case established, in this jurisdiction the rule that the relationship is to be 'judged by the nature of the duty being performed by the servant at the time, and which of the two masters is exercising control.' The question to be answered in making the determination is—In the act which the servant was performing at the time, *was he in the business of and subject to the direction of* the temporary employer as to the details of such act?" (Emphasis supplied.)

With the above principles in mind, we now examine the evidence before us.

The record shows that Ross was the employee of Woodmansee-Abbott, and had been for about six years, at the time of the accident. His job was to repair and renovate old pianos. On the day of the accident Transcon's truck and driver arrived at the Woodmansee-Abbott dock with a crated piano. He sent notice of his arrival and the foreman sent Ross down to help unload the piano. Ross went to the dock and did so, and in the course of helping to unload the piano he received the injury (described as a wrenching injury to neck and shoulders) upon which his claim is based. Although Woodmansee-Abbott customarily furnished a help to assist the truck driver, this was the first time Ross had functioned in that capacity; usually other employees were used for this purpose. During the unloading process there was a minimum of conversation between Ross and the truck driver, and whether the driver actually gave Ross any intructions is debatable. He did say "I will scoot it back to the back" and "We will ease this down on the end". After the piano was on the sidewalk, the driver told Ross "to put that dolly under it".

There was substantially uncontradicted evidence to the effect that the procedure followed in the instant case was that usually followed in the case of any delivery by Transcon to the Woodmansee-Abbott dock —that is, the truck driver usually came to the Woodmansee-Abbott dock without a helper, expecting to get help from some employee there; that unloading a piano is a job ordinarily requiring two men; that in instances when help from a Woodmansee-Abbott employee was not available, or was refused, the driver took the piano back to his headquarters, returning at a later date, sometimes with a truck equipped with a hydraulic lift; that Woodmansee-Abbott was not reimbursed in any way for the assistance it rendered to Transcon in helping unload the pianos; that the unloading process is supervised by the Transcon driver, who is in charge of the freight, and responsible for it, until it is "on the dock".

We hold that the above summarized evidence is a sufficient basis for the finding that Ross was the "loaned employee" of Transcon. Under the evidence the work of unloading the piano was obviously

Transcon's work and responsibility—its job was not finished until the delivery had been completed. Its servant or agent, the driver, was the person in charge, and since the responsibility was his, he had the right to direct and control the work. Whether his quoted remarks to Ross constituted an actual exercise of control is immaterial; Ross was "subject to" the control of the driver, and the fact that the driver may have merely "set the servant to do what is necessary" makes no difference. In short, in answering the question posed in Crutchfield v. Melton, supra, the State Industrial Court properly found on the basis of the record before us that Ross was "in the business of and subject to the direction of" Transcon as to the details of delivering and unloading the piano, and that he was Transcon's "loaned employee".

The award is sustained.