**TULSA RIG, REEL & MANUFACTURING COMPANY and The Travelers Insurance Company, Petitioners,**

v.

**Leroy MILLSAP and Workers' Compensation Court of the State of Oklahoma, Respondents.**

**No. 53944.**

Supreme Court of Oklahoma.

Nov. 4, 1980.

---

12. *Firestone Tire & Rubber Co. v. Barnett*, Okl., 475 P.2d 167 [1970]; see also, *Bell v. Meadors*, Okl., 534 P.2d 1288 [1975].

Sanders, McElroy & Carpenter by Jerry H. Holland, Tulsa, for petitioners.

Whitten, McDaniel, Osmond, Goree and Davies by Edward E. Davies, Jr., Tulsa, for respondents.

HARGRAVE, Justice.

Leroy Millsap filed a Form 3 [1], Employee's First Notice of Injury and Claim for

---

1. In 1975, the respondent amended his Form 3 to allege an injury to his back which arose out of the same accident. In answer to this amended claim, the petitioners denied that the additional injury was connected with the accident of December 14, 1970, and furthermore, that it

Compensation, in the State Industrial Court alleging that on December 14, 1970, during the course of his employment his left leg was crushed below the knee as the result of a fall. This notice, filed on November 29, 1971, received an answer from the respondent's employer[2], Tulsa Rig, Reel and Manufacturing, and its insurance carrier, the Travelers Insurance Company, on December 8, 1971, admitting all jurisdictional issues; reciting that respondent Leroy Millsap had been paid temporary total disability compensation benefits from December 14, 1970.

The petitioners continued to compensate the respondent until the 300 weeks allowed by statute had run. 85 O.S.1971 § 22.[3] In May, 1977, the petitioners, Tulsa Rig & Reel and Travelers, sought termination of temporary total disability compensation and a hearing was set on October 26, 1977, to determine permanent disability. At this hearing petitioners again stipulated that the respondent was an employee of Tulsa Rig & Reel covered by the provisions of the Act, and that temporary disability compensation had been paid for 300 weeks. It was during this hearing that testimony[4] was elicited from the respondent suggesting that the respondent may have been a "loaned servant" to the Flint Steel Co. on the day of the accident.

The petitioners were given permission to withdraw the stipulations and file an amended answer stating the respondent was not an employee of Tulsa Rig and Reel at the time of the accident, therefore the Workers' Compensation Court did not have jurisdiction over petitioners in this matter. After an additional hearing, briefs were requested covering the statute of limitations, estoppel and loaned servant. Judge Fullerton entered an order stating petitioners had not timely raised the loaned servant doctrine, therefore Millsap was barred from seeking remedies against other parties, and petitioners were estopped from denying liability on the claim. The order also found that the respondent was employed by the petitioners, that he was permanently and totally disabled and that the petitioners were required to pay the balance of the 500 weeks[5] provided by 85 O.S.1971 § 22. This order was later corrected to reflect the fact that the accident caused injury to the back and body as a whole as well as the left leg. On appeal to the Workers' Compensation Court en banc, the order was affirmed as corrected.

The petitioners thereupon perfected an appeal to the Oklahoma Supreme Court. The case was assigned to the Court of Appeals, Division I, which in an unpublished opinion dated March 4, 1980, vacated the award on the grounds that the respondent was not performing any work for Tulsa Rig & Reel at the time of his injury, and therefore the Workers' Compensation Court

---

was barred by the one year statute of limitations. This defense, however, was waived at the hearing on October 26, 1977.

2. On both the original Form 3 and the amended Form 3, Tulsa Rig & Reel, Tulsa, Oklahoma, was typed in the space provided for the name and address of the respondent's employer.

3. 85 O.S.1971, § 22(2) reads: "Temporary Total Disability. In cases of temporary total disability, sixty–six and two–thirds percent (66⅔%) of the employee's average weekly wages shall be paid to the employee during the continuance thereof, but not in excess of three hundred (300) weeks ..."

4. Testimony of the respondent (October 26, 1977):
Direct Examination:
Q: All right sir, and would you please tell the Court what you were doing ...

A: Well, I was hired on Rig and Reel and Flint Steel was putting up a structure, sheet metal, and I was working, I was a structural hand, they loaned me out to Flint Steel. There was a man short, and we was decking the building, and setting nerve units in it ...
Cross Examination:
Q: Mr. Millsap, did I understand you to say you were working for a Flint Steel when this thing occurred?
A: I was loaned out to Flint Steel, yes.
Q: You were?
A: Yes, Rig and Reel, they do rods, and Flint Steel does structural.

5. 85 O.S.1971 § 22(1) reads: "Permanent Total Disability. In case of total disability adjudged to be permanent, sixty–six and two–thirds per cent (66⅔%) of the average weekly wages shall be paid to the employee during the continuance of such total disability not exceeding five hundred (500) weeks; ..."

lacked jurisdiction to make any award against Tulsa Rig & Reel and Travelers. That decision resulted in a petition for certiorari in this Court which was granted May 19, 1980.

The issues presented before this Court are (1) whether the relation of master and servant is a prerequisite to the jurisdiction of the Workers' Compensation Court to make an award of compensation which may be raised at any time before the final disposition of the case, and (2) whether the voluntary payment of temporary compensation by an employer constitutes an admission that the claim is compensable and which estops the employer from contending in subsequent proceedings that the claim is not compensable. The Court of Appeals found that the Workers' Compensation Court was without jurisdiction to make an award in the absence of an employer employee relation between Tulsa Rig & Reel and the respondent. Just as in an employer–employee/independent contractor dispute where "the decisive test for determination of whether an employer and employee relationship existed is whether the employer retained a right of control and superintendence of the work," *Clark v. First Baptist Church, 570 P.2d 327, (Okl.1977)*, the test for determining whether the respondent was a loaned servant rests upon the amount of control and direction exercised by his general employer and the amount of control and direction exercised by his special employer–a determination which was not made by the Workers' Compensation Court inasmuch as the record contains no testimony relative to the issue of how much control was exercised over Mr. Millsap by either employer.

As stated in *Smith v. Hall, 418 P.2d 665, (Okl.1966)* (quoting *Hodges v. Holding, 204 Okl. 327, 229 P.2d 555 (1951) (Syllabus)*):

The controlling factor in determining whether a regular employee of one master has become the special or loaned servant of another is: Has the general employer released, for the time required to perform some particular work, all authority to control or direct the manner and method of the work to be done and surrendered such direction and control to the special employer?

The Court in *City of Tulsa v. Randall, 174 Okl. 630, 52 P.2d 33, (1935)* (quoting *New v. McMillan, 79 Okl. 70, 191 P. 160 (1920)*), also stated that "it makes no difference whether the proprietor to whom the servant is loaned actually exercises his right of control or direction as to the details of the work or simply sets the servant to do what is necessary, trusting to his expert skill for the results."

Therefore, the key to the determination [6] of whether a claimant in a compensation case was a loaned servant is whether "in the performance of the act in which [the claimant] was injured, the claimant was *in the business of and subject to the direction of* the temporary employer as to the details of the act," *Transcon Truck Lines v. Ross, 390 P.2d 889, (Okl.1964)* (emphasis added), the right to discharge the employee or the obligation to pay his wages being merely incidental indicia of the control and not exclusively determinative. *Chickasha Plumbing Co. v. Rogers, 366 P.2d 410, (Okl. 1961); King's Van & Storage Co. v. Criner, 301 P.2d 1015, (Okl.1956)*. For if an employee, though ordered by his general employer to assist a third person, remains under the control and subject to the orders of his general employer and performs work which is part of the regular business of the general employer, the employee does not become the servant of the third person but remains the employee of his general employer. *Hodges v. Holding, 204 Okl. 327, 229 P.2d 555 (1951)*. A general or lending employer is not necessarily freed from liability by the act of loaning employees to third parties. This question of liability was also addressed by Larson in 1B A. Larson,

---

**6.** Other factors entering upon the determination are found at 99 C.J.S. Workmen's Compensation § 47c (1972).

*The Law of Workmen's Compensation,* § 48.00 (1979), in which he stated:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation ONLY IF
>
> (a) the employer has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work. When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation. (E.A.)

Under the factual scenario this action is grounded upon, there is an overriding consideration which determines this appeal without resort to a remand for hearing to develop the issue of loaned servant. Are the petitioners, as the respondent argues, estopped to deny liability (even if none originally existed) after the respondent's position has changed and rights to which he was entitled are lost by the lapse of time and the running of the statute of limitations? Judge Cashion of the Workers' Compensation Court concurred specially in the decision which affirmed Judge Fullerton's order holding the petitioners liable, stating: "it should be made clear that the estoppel found by the Trial Judge did not occur when [the petitioners] voluntarily started paying temporary total disability, nor did it occur when [the petitioners] admitted claimant was the employee of [the petitioners]. It occurred when the period of limitations had run barring a claim against Flint Steel."

The petitioners base their argument against estoppel on language found in *Jake's Casing Crews, Inc. v. Grant, 451 P.2d 700 (Okl.1969).* In *Grant,* the injured claimant was furnished temporary total compensation and medical treatment under the mistaken assumption that the injury was received while the claimant was engaged in work on behalf of his employer. However, in *Grant,* the defense that the claimant was on a mission of his own when injured was timely asserted and the claimant was not barred from other remedies had they existed nor was he prejudiced by the defense. The language relied on is as follows:

> Voluntary payment of temporary compensation and furnishing medical treatment by employer without finding or order of the State Industrial Court does not constitute admission that claim is compensable. and does not estop employer from contending in subsequent proceedings that claim was not compensable.

*Id.* at 700 01. (syllabus). Since the question of estoppel however was not raised on appeal by the claimant in *Grant,* the language is at most dicta and cannot be so broadly interpreted as to be applicable in this situation.

This Court recognizes that sound public policy requires and encourages the voluntary payment of compensation and furnishing of medical care, a public policy furthermore recognized by the legislature by its adoption of 85 O.S.1979 Ch. 4, App. Rule 14.[7]

■ As stated in *Southern Underwriters v. Schoolcraft,* 138 Tex. 323, 158 S.W.2d 991, (1942):

> Courts should encourage and not discourage the prompt payment of compensation when an injury is sustained by an employee, and a holding that payments made pending the final investigation of the claim would be binding upon the insurer both as to liability and rate of compensation regardless of what that investigation should disclose would manifestly discourage prompt payments following injuries.

While this Court encourages prompt voluntary payments of compensation it does not at the same time intend to relieve the burden on the employer to investigate the

---

**7.** 85 O.S.1979 Ch. 4, App. Rule 14 reads in part:

"The fact that an employer does *begin* to provide these benefits on a voluntary basis as outlined in this court rule shall not constitute an admission of liability on the part of the employer." (emphasis added).

claims for compensation. The purpose of the notice requirements under the workmen's compensation law is to give an employer prompt information and to afford the employer the opportunity to make a timely investigation concerning the nature and the extent of the injury and to provide competent medical care to prevent or minimize disability. See 85 O.S.1971 § 24; *Goombi v. Trent, 531 P.2d 1363 (Okl.1975); Capitol Steel & Iron Co. v. Austin, 519 P.2d 1364 (Okl.1974).*

■ Realizing that the syllabus above quoted constitutes dicta in the strict sense we remain of the opinion that as a general statement it is soundly grounded. See *Jake's Casing Crews v. Grant, supra, (Syllabus I).* Where the payments of medical and temporary total are made for such a length of time that the injured worker is compensated until the statute of limitations runs on both a workers' compensation claim and the bringing of an action for damages in District Court, the reliance of the worker on the representation of the employer has irreparably changed the worker's position to his detriment. At that point, the employer is estopped to deny the fact of employee status admitted in previous pleadings. The result is similar to that reached in *South Buffalo Ry. Co. v. Ahern, et al., 344 U.S. 367, 73 S.Ct. 340, 97 L.Ed. 395 (1953).* There a claimant, entitled to relief under the Federal Employers Liability Act, sought relief in a State Workmen's Compensation Court and received that relief. The employee died and his widow sought death benefits, whereupon the employer disputed the Board's jurisdiction over the subject matter. The last paragraph of the opinion reads as follows in part:

> . . . Here, however, whether motivated by charity, dislike of litigation, or trial strategy, appellant made payments until the statute of limitations barred the employee's federal claim. Fully advised of its legal rights, it submitted the controversy to the board. The New York Court of Appeals viewed these circumstances as estopping appellant from the assertion of so long delayed change of heart. No tenet of federal law compels otherwise.

See also *Trenhaile v. Quaker Oats Co., 292 N.W. 799 (Iowa, 1940),* wherein an employer had paid weekly benefits to an injured worker for a year and a half before the workman filed a motion to reopen to consider permanent disability. Thereafter the employer filed an amended motion alleging lack of covered employee status under the Iowa Act. The Court stated that the sequence of events clearly indicated the appellee was lulled to sleep by the memorandum agreement settling the employment status, prejudicing the appellee's position:

> For twenty-three months the appellant admitted that the relationship of employer and employee existed. Then just twenty six days before the statute of limitations would have run on a common law action, for the first time they pleaded that a representative capacity existed. At that time a hearing was in progress before the Deputy Industrial Commissioner, which was not decided until October of 1939, after the statute of limitations had run.

> No one could read this record and say that appellee had not been misled or changed his position.

> The Quaker Oats Company and its insurance carrier had ample opportunity to investigate their case before entering into the agreement. No fraud is alleged and no effort has been made to set aside, change or alter their agreement. By entering into the memorandum agreement, by failing to raise the defense, if it be one, by paying compensation and by waiting until practically the last hour before the statute of limitation would have run, for commencing a common law action, the appellants have waived and are estopped from pleading the defense of representative capacity.

One final point made in appellant's brief bears upon this discussion. Appellant states the two stipulations (made five years apart) that appellee was an employee are a result of a mistake of fact. In the November 1978 hearing, appellants admitted they did not investigate the claim: "We didn't

make a great big issue out of going out and investigating the thing," but had the investigation been made, the fact of the loaned servant defense would have become apparent. It seems no hardship to hold appellant to his stipulated mistake since a reasonable inquiry to claimant's foreman would have disclosed the fact of the matter.

While it is true that jurisdiction of the Workers' Compensation Court cannot be expanded by agreement, waiver or conduct, *Cities Service Gas Co. v. Witt, Okl., 500 P.2d 288 (1972),* the precise scenario presented here is not in conflict with that tenet. In finding the appellant estopped to deny the employee status they recognized for more than six years, the jurisdictional fact of employer–employee status is fixed and the proper jurisdiction of the Court may then reach the controversy as done here.

The opinion of the Court of Appeals, Division I is hereby VACATED and the decision of the Workers' Compensation Court sitting en banc is hereby AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and DOOLIN, JJ., concur.

OPALA, J., concurs by reason of *Ishmael v. Henderson,* 286 P.2d 265 (Okl.).