CITY DIESEL SERVICE and State Insurance Fund, Petitioners,

v.

Roy S. COLLIER, (Deceased), Laquita M. Collier, The Workers' Compensation Court, and Galveston Truck Lines, Respondents.

No. 53142.

Supreme Court of Oklahoma.

June 30, 1981.

Richard G. Mason, State Ins. Fund, Oklahoma City, for petitioners.

Ben A. Goff, Oklahoma City, for respondents.

LAVENDER, Justice:

Laquita M. Collier filed a claim in the Workers' Compensation Court for the benefit of the dependent children of Roy S. Collier, deceased, who suffered pecuniary loss from their father's death on February 1, 1977, caused by accidental injury on January 20, 1977. Petitioners defended this claim on the grounds that deceased was a

loaned servant of respondent Galveston Truck Lines, therefore respondents Galveston and its insurance carrier, Fireman's Fund, should be liable for payment of benefits.

Order was entered finding claimant's deceased an employee of petitioner City Diesel and not of respondent Galveston; deceased was not a loaned servant of respondent Galveston; and ordering payment by petitioners; James Fullerton, Trial Judge. On appeal to the Workers' Compensation Court en banc, the order was affirmed. Petitioners perfected appeal to this Court; the cause was assigned to the Court of Appeals, Division 1. There, the order was reversed and remanded in an unpublished opinion dated December 23, 1980, with directions to find respondent Galveston as the employer of deceased and thereby liable for payment of benefits on the basis that the order of the Workers' Compensation Court was not supported by the evidence. Rehearing was denied by the Court of Appeals, February 10, 1981. Respondent sought writ of certiorari which was previously granted.

Settled law declares that the determination of questions of fact in a workers' compensation case rest exclusively with the Workers' Compensation Court. *Goombi v. Trent*, 531 P.2d 1363 (Okl.1975); *In re Loague*, 450 P.2d 492 (Okl.1969); *State Highway Dept. v. Rhine*, 411 P.2d 548 (Okl.1966). Respondent contends that whether an employee is a "loaned servant", i. e. what is the identity of the employer, is a question of fact, therefore the Court of Appeals should not have substituted their findings for that of the Workers' Compensation Court on this issue. Petitioner contends that the determination of the identity of the employer is a jurisdictional question, or question of law, whereby the Supreme Court (or Court of Appeals) can review the record and make an independent finding therefrom.

It seems that petitioners' argument is based on a theory that the loaned servant doctrine is encompassed in the issue of the employer/employee relationship. This Court has often stated that the existence of employer/employee relationship is a question of law and thus can be reviewed independently. *Matter of Worcester*, 576 P.2d 1168 (Okl.1978); *Leonhardt Enterprises v. Houseman*, 562 P.2d 515 (Okl.1977); *Herron Lumber Co. v. Horn*, 446 P.2d 53 (Okl.1968). In these cases and others setting out the same proposition, the issue was whether the claimant was an employee or independent contractor, thus presenting the jurisdictional question. Here, the controversy is not over whether the deceased was anyone's employee. The controversy is over whose employee was he at the time he was injured.

This issue was addressed in *Byrne Doors, Inc. v. State Industrial Commission*, 193 Okl. 541, 145 P.2d 754 (1944). This Court in paragraph 2 of the syllabus, stated:

The relation of employer and employee under the loaned servant doctrine is a question of fact to be determined by the State Industrial Commission, and where from all the facts and circumstances it is determined that such relation exists, this court will review the question as a matter of law and where there is sufficient evidence to sustain the finding the State Industrial Commission made thereon, such finding will not be disturbed on review.

We reaffirm that holding. Whether the loaned servant doctrine applies in a particular case is a question of fact to be determined by the Workers' Compensation Court. If such findings are reasonably supported by competent evidence, they will not be disturbed on appeal. *In re Loague, supra; Howland v. Douglas Aircraft Co.*, 438 P.2d 5 (Okl.1968). Existence in the record of evidence from which the trial court could have come to a contrary conclusion is immaterial under the law applicable to review of findings of the Workers' Compensation Court. *Riley v. Cimarron-Empire Constr. Co.*, 420 P.2d 550 (Okl.1966). With these mandates in mind, we will review the record only to determine whether the findings of the Workers' Compensation Court are supported by any competent evidence.

■ The situation leading to this controversy is not in dispute. Galveston Truck Lines, hereinafter Galveston, hauls freight as an irregular route common carrier in Texas and Oklahoma. City Diesel Services, Inc., hereinafter City, operates a truck repair shop in Oklahoma City and also leases tractor units to transport companies. Galveston and City entered into a leasing agreement on February 12, 1975, by which Galveston leased a tractor unit from City. The agreement provided that the equipment covered by it was to remain in Galveston's exclusive control and that "the driver or operator of the equipment, if other than Lessee, shall be employed, and controlled by the Lessee." The deceased, Roy S. Collier, was hired by City then sent to Houston to work for Galveston driving the leased tractor unit. Depositions of Galveston's president and City's president reveal that Galveston had to approve of and had authority to terminate employment of drivers sent by City to drive for Galveston. These depositions also reveal that City could also discharge the drivers and that City expected drivers to report any mechanical problems the tractors had. Both companies paid workers' compensation insurance premiums, City—based on the drivers' salaries, and Galveston—based on the number of trucks it had in operation. Galveston paid City lease payments based on gross receipts of the hauls (70–75%) and City in turn paid the deceased his salary, based on a percentage of this amount, in which City withheld taxes. On January 20, 1977, the deceased was, injured in Oklahoma City while unloading a haul he had made for Galveston. He later died of these injuries. The parties stipulated that this was a work-related injury while in hazardous employment.

The general test that has been most often used in this jurisdiction in determining whether an employee was a loaned servant is whether "in the performance of the act in which the employee was injured, the claimant was *in the business of and subject to the direction of the temporary employer as to the details of such act." Tulsa Rig, Reel & Manufacturing Co. v. Millsap*, 619 P.2d 625 (Okl.1980); *Transcon Truck Lines v.*

*Ross*, 390 P.2d 889 (Okl.1964); *Crutchfield v. Melton*, 270 P.2d 642 (Okl.1956); *Wylie-Stewart Machinery Co. v. Thomas*, 192 Okl. 505, 137 P.2d 556 (1943). The hiring of the employee, the right to discharge him, and the obligation to pay his wages are merely incidental indicia of the control and not exclusively determinative. *Chickasha Plumbing Co. v. Rogers*, 366 P.2d 410 (Okl. 1961); *King's Van & Storage Co. v. Criner*, 301 P.2d 1015 (Okl.1956). Other elements have been found to be decisive in other cases including: the fact that the employer purchased workers' compensation insurance coverage for employees while they were engaged in the very activity they were hired and paid to do and the fact the general employer was in the business of hiring out labor, *Ishmael v. Henderson*, 286 P.2d 265 (Okl.1955); the fact that the special employer had the right to control the employee, regardless of whether he actually used it, *Transcon Truck Lines v. Ross*, 390 P.2d 889 (Okl.1964); *City of Tulsa v. Randall*, 174 Okl. 630, 52 P.2d 33 (1935); the fact that the special employer's lease agreement with the general employer specifically provided that the special employer was to provide workers' compensation coverage for the employees, *Chickasha Plumbing Co. v. Rogers, supra.*

One of petitioner's contentions is based on the lease agreement between City and Galveston which provides that the driver or operator of the equipment leased "shall be employed, and *controlled by* the Lessee [Galveston]." He contends that the analysis of the general test by this Court in *Transcon Truck Lines, supra*, should have been followed by the Workers' Compensation Court. The Court in *Transcon* equated the words "subject to" of the general test to mean the *right to* control. According to the provision in the lease, Galveston had the right to control the drivers. However, it is undisputed that City retained some control over the manner in which the driver (the deceased) was to operate the tractor owned by City, casting doubt on the "control" provision in the contract as to whether the parties considered it determinative. City

could discharge the drivers, transfer them, and required them to perform maintenance checks. As stated in *Smith v. Hall*, 418 P.2d 665 (Okl.1966) (quoting *Hodges v. Holding*, 204 Okl. 327, 229 P.2d 555 (1951) (Syllabus)):

> The controlling factor in determining whether a regular employee of one master has become the special or loaned servant of another is: Has the general employer released ... *all authority to control* or direct the manner and method of work to be done and surrendered such direction and control to the special employer? (Emphasis ours.)

In reviewing the tests and factors set out above, we find the decision of the Workers' Compensation Court sitting en banc to be sustained by competent evidence.

The opinion of the Court of Appeals, Division 1 is vacated and the decision of the Workers' Compensation Court sitting en banc is affirmed.

IRWIN, C. J., BARNES, V. C. J., and HODGES, SIMMS, DOOLIN, HARGRAVE and OPALA, JJ., concur.